PONDER, Judge.
Defendant has appealed the award of workmen^ compensation benefits for total and permanent disability on the basis that the trial court erred in finding that plaintiff was disabled and that his disability was the result of the accident sued upon.
It is undisputed that Curley Gradney suffered a double hernia on July 19, 1971, while engaged in his regular employment by defendant’s predecessor corporation. Bilateral hernioplasties were performed on him on August 9, 1971. Thereafter in December an exploratory operation was performed. He was released as recovered from the hernia and hernioplasties on March 1, 1972. However, plaintiff, asserting that he is unable to do so, has never returned to work.
■ Dr. Rodney Landreneau, Jr., a board certified general surgeon, performed the bilateral hernioplasties on plaintiff, and followed him at intervals of three weeks. When he started making complaints of severe pain in the left inguinal region radiating into the left groin, a diagnosis of pros-tatitis, seminal vesiculitis and left ilioinguinal neuritis was made. After treatment for the prostatitis did not remove the pain, a second operation, an exploratory one of the left inguinal incision, was performed on December 5.
The left inguinal nerve was cleaned and a small neuroma formation near the end of the hernia repair was excised. Adhesions had formed around the spermatic cord; so it was examined and traced back to the hernia repair area, but no constriction of the cord was found. The ilioinguinal nerve was placed away from the scar and the fascia layers were sutured so that the nerve would not be involved in any further scar formation. Complaints of back pain had begun in November when the plaintiff gave a history of a sudden cracking and a hard stabbing pain in the left inguinal and left superpubic region during sexual intercourse the first week of October. Throughout the months of December and January the plaintiff had definite signs of left sided sciatica. Because of continued complaints of pain in his left testicle and swelling of the prostate gland and left seminal vesicle, the plaintiff was referred to a urologist, who recommended treatment for prostatitis, which was given in January and February, 1972. The complaints of pain which continued were found to be compatible with a low back syndrom? *536 along- with his ilioinguinal complaints, the latter becoming less with the improvement in his prostatitis. The patient was discharged on March 1, 1972, as recovered from surgical procedures, "hernia complaints and trapped left ilioinguinal nerve. The doctor felt that the low back and left leg complaints were unrelated to the accident of July 19, 1971, and that there was a 10 percent permanent disability of the left inguinal region due to pain. This was explained as meaning that plaintiff would suffer some pain about 10 percent of his working time, which, however; would not be substantial or disabling. The doctor felt that the pains complained of on subsequent visits on March 28 and April 10 were related to the low back syndrome and not the hernioplasties. When plaintiff complained of decreasing size of his left testicle an examination was made and the size was found to be the same as in July, 1971. Complaints of pain in left arm and shoulder could not be related at all. An examination on October 10, 1972, revealed no persistent signs of ilioinguinal neuritis or pathology in the inguifial area, but did reveal signs of sciatica in the left leg. The degree of disability resulting from pain in the inguinal area had decreased from 10 percent to “something like 5 percent, maybe half that much” from March to October. The pain was described as follows: ■
“It’s not going to be excruciating pain. It’s going to be just a little sensation of pain in His left side. And it should not be enough to prevent him from continuing to work.” (Tr. II, page 36).
Dr. Frederick Girard Rodosta, urologist, first examined plaintiff on February 4, 1972, on referral from Dr. Landreneau. Dr. Rodosta’s initial impression was three diagnoses: A neuroma of the left ilioin-guinal nerve, a mild prostatitis and hypertension. Medication was prescribed and the patient instructed to return in three weeks. The second examination showed an improvement in the left groin and left flank pain. A pyelogram was recommended but evidently never performed., His opinion was that Mr. Gradney had a low grade mild prostatitis and either a herniated disc or a neuroma, or scar formation on a nerve.
Dr. George P. Schneider, an orthopaedic surgeon, who examined plaintiff on August 17, 1972, found no orthopaedic problem relating to his injury and felt that the persisting residual difficulties were related to the surgery.
Dr. Edward Phillips, orthopaedic surgeon, who saw plaintiff on May 8, 1972, found no objective findings of an ortho-paedic nature to prevent plaintiff returning to work.
Dr. John A. Tassin, general practitioner, made a cursory examination for public welfare purposes. Concededly, his testimony is of little assistance.
Dr. Donald G. Edgerton, a general surgeon, examined plaintiff on September 15, 1972. He found decreased sensation in his antero-medial left thigh and postero-medial leg attributed to some back pathology, not to the hernia repairs. A Tinel test was performed with the result that Dr. Edger-ton felt that there was no neuroma present. He also found no constriction of the sper-matic cord and no narrowing of the inguinal ring. He recommended no further surgery.
Dr. W. R. Hargrove, a general practitioner of medicine and surgery, testified substantially as follows: He first saw the plaintiff on May 23, 1972, when the latter had complaints of pain in back, the lower part of the lumbar spine, pain in the left hip, left buttocks, left inguinal region, in the left testicle and scrotum and left knee. The patient especially complained of difficulty in raising the left leg while supine, of atrophy of left testicle and of pain in act of intercourse.
The doctor’s findings were very marked tenderness in the regions of the left inguinal ring and of the inguinal canal and lower left portion of the abdomen corre *537 sponding to the internal inguinal ring, a definite reduction in size of the left testicle as compared to the right, a tenderness and pain on pressure to the left testicle and tenderness in left lumbar region and in the buttocks on pressure through the fascia ovalis.
His diagnosis was a constriction of external inguinal ring exerting pressure on the spermatic cord. There was a definite reduction in average size of external inguinal ring.
On plaintiff’s second visit on June 16, he complained of loss of libido, a burning of bottoms of both feet, pain starting at lower lumbar spine and radiating down sciatic pathway to the left foot, the latter typical of sciatic neuralgia. He saw the patient on June 17, July 6, September 5, October 31, November 7 and November 12, the last the day before the trial. All the complaints were consistent throughout. The findings and diagnosis on November 12 were the same as on the first visit on May 23. It was this doctor’s opinion that adhe-sions and scar tissue had reformed after the last operation causing compression again.
Testimony of lay witnesses was adduced to the effect that plaintiff had been a good worker prior to the accident and had not worked since. Plaintiff himself testified that he had not been able to work since his herniation.
Plaintiffs, even in workmen’s compensation cases, must prove the elements of their cases by a preponderance of the evidence. See Hebert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286 (1965), from which the following quotation is taken:
“. . . in a compensation case the plaintiff has the burden of proving his claim with legal certainty by a preponderance of the evidence, and . . . ‘speculation, mere possibility, conjecture and even unsupportéd probability are not sufficient to support a judgment for workmen’s compensation benefits.’ ”
We can find no manifest error in the trial court’s conclusion that plaintiff is totally and permanently disabled, but the question of the causal relationship between the accident and the disability presents a more difficult problem. Since there is no dispute that plaintiff’s back and leg complaints are not results of the industrial accident of July 19, 1971, we must look to those complaints related to the hernioplasties. Dr. Hargrove’s conclusion that plaintiff was suffering from a constriction of the external inguinal ring exerting pressure on the spermatic cord was based upon his finding of tenderness in the regions of the left inguinal canal and of the left lower abdomen, an atrophy of the left testicle and pain resulting from pressure thereon and a reduction in the average size of the external inguinal ring. Dr. Landreneau, the treating surgeon, had anticipated some minor pain in the left inguinal region but asserted these were neither substantial nor disabling. Atrophy of the left testicle was denied by Dr. Landreneau who had specifically checked for that condition. Drs. Landreneau and Edgerton, both surgeons, found no narrowing of the inguinal ring or resultant compression of the spermatic cord. .
Since the testimony of the physician who treated the claimant soon after the accident is given more weight than that of one who treated the claimant later and since the specialist is preferred to the general practitioner, we are unable to hold that plaintiff has borne the burden of proof incumbent upon him, especially since the physical objective findings relied upon by plaintiff’s medical witness are denied by the other physicians.
The judgment of the trial court awarding benefits for total and permanent disability is reversed, and plaintiff’s suit ordered dismissed at his costs.
Reversed.
*538 Frugé respectfully dissents and assigns written reasons.