LANDRY, Judge.
Plaintiff appeals rejection of his demand for maximum workmen’s compensation benefits for alleged total permanent disability resulting from aggravation of a pre-existing arthritic condition. We affirm and concur in the trial court’s conclusion that appellant has failed to show causal relationship between the accident and his present condition. An attorney, who formerly represented appellant and who negotiated a compromise rejected by appellant, has intervened herein. Said attorney seeks recovery from appellant of a stipulated fee in the sum of $400.00, should appellant emerge victorious. Our rejection of appellant’s claim obviates the need for considering intervenor’s demand.
For all practical purposes, defendants admit the occurrence of the accident on July 16, 1970. Appellant, a 52 year old bricklayer’s helper, received a low back injury while attempting to slide a bale of bricks along a scaffold at the third story level of a building being constructed on the campus of Southern University. The bale weighed approximately 400 pounds. Plaintiff fell when he stepped into a hole in the scaffold flooring. The mishap was reported immediately to appellant’s superior, Riddle, who authorized appellant to seek medical aid. Appellant had been a laborer in the construction trade all of his life. At the time of his injury, appellant was employed by Riddle Masonry Company, Inc.
The evidence is overwhelmingly to the effect that appellant was a steady worker who never experienced any back pain or discomfort whatsoever preceding the acci *560 dent. Appellant so testified, as did his acquaintances and co-workers, David Hunter, Louis Reed and Joe Carter.
Appellant saw Dr. Harry Morris, General Practitioner, on the date of the accident. Dr. Morris’ report, accepted in lieu of his testimony, indicates appellant complained of sacroiliac pain and numbness of the right leg. Examination disclosed mild pain to touch in the right sacroiliac area. Straight leg raising tests proved negative. X-rays disclosed hypertrophic degenerative changes throughout the lumbar spine and congenital anomaly of the transverse process of the first lumbar vertebra. Dr. Morris prescribed pain relievers and bed rest. He diagnosed plaintiff’s condition as sacroiliac sprain. The following day appellant was again seen by Dr. Morris who considered appellant improved despite appellant’s complaints of pain in the back and right leg. On July 20, 1970, Dr. Morris saw appellant and found no limitation of motion. Plaintiff was last seen by Dr. Morris on July 23, 1970, at which time plaintiff reported feeling better, but stated he felt a burning sensation in the back upon standing, and neck pain when he stood erect too long. Dr. Morris again found no limitation of motion, and was of the opinion plaintiff should make a complete recovery with no residual disability.
On August 13 and 20, 1970, appellant consulted Dr. L. P. Laville, Jr., who diagnosed appellant’s condition as mild residual lumbosacral strain. Dr. Laville initially prescribed diathermy, pain relievers and rest. He felt appellant was immediately able to perform light duty, and in a week could return to his normal heavy labor. On appellant’s second visit, Dr. Laville considered plaintiff fully recovered and able to resume work on August 24, 1970.
Plaintiff was seen by Dr. Charles B. Cracraft, Orthopedic Surgeon, on September 4, 1970. Dr. Cracraft’s report indicates he found minimal paravertebral muscle spasm and some restriction of flexion motions of the back. He also noted that all other motions were complete, but caused some pain upon extremes. X-rays revealed no fractures, dislocations or evidence of spondylolisthesis. He did note moderate hypertrophic lipping of the lumbar vertebral bodies and considerable narrowing of the lumbo-sacral disc space pos-teriorly. His diagnosis was (1) strain and contusion of the low back; (2) hyper-trophic arthritic changes of the lumbar spine, and (3) degenerative disc disease at the lumbo-sacral level. Physical therapy was prescribed for a week, and the patient advised to return September 11, 1970. Appellant returned September 11, 1970, and reported feeling better, but also stated he had attempted to do some yard work on the previous Wednesday and had experienced some back pain. Dr. Cracraft found all motions complete and an absence of muscle spasm. Appellant was advised to continue therapy treatments and return in a week. Appellant was also advised he could probably resume work Monday, September 21, 1970. On September 18, 1970, Dr. Cracraft gave plaintiff a note stating plaintiff could resume work September 21, 1970.
On October 2, 1970, appellant returned to Dr. Cracraft. Appellant stated he had gone to work helping his brother-in-law pick potatoes, and that upon stooping down, he could not straighten up. On this occasion, Dr. Cracraft found considerable muscle spasm and restriction of all motions. Thereafter Dr. Cracraft saw plaintiff on October 9, 16 and 23, and November 9, 1970. On each visit plaintiff was found to be improving. On November 9, 1970, Dr. Cracraft advised plaintiff to resume work the following day. Plaintiff returned to Dr. Cracraft on December 4, 1970, and stated he had resumed work as a bricklayer’s helper for about a day and a half whereupon plaintiff again experienced back pain. Dr. Cracraft found appellant disabled from doing heavy work. Plaintiff was also seen by Dr. Cracraft on December 11, 1970, and advised not to resume heavy work. Plaintiff was seen by Dr. Cracraft for the last time on January 1, *561 1971, at which time plaintiff was advised not to return to heavy work. Dr. Cra-craft’s testimony is that, as of September 21, 1970, plaintiff’s complaints of pain referable to subject accident had disappeared. He was of the unqualified opinion that any disability plaintiff suffered subsequent to September 21, 1970, was due entirely to the generalized spinal arthritis with which plaintiff was suffering, and not from an aggravation thereof resulting from subject accident.
Appellant was seen by Dr. Allen Jackson, orthopedic specialist, on March 2, 1971. His findings were essentially the same as Dr. Cracraft’s. Dr. Jackson found appellant disabled to do heavy work. From the medical history related by appellant, Dr. Jackson was of the opinion that appellant’s present disability was due entirely to appellant’s arthritis, and not to any aggravation thereof resulting from the accident in question.
Plaintiff, relying upon Russell v. Employers Mutual Liability Ins. Co. of Wis., 246 La. 1012, 169 So.2d 82, and Genella v. City of New Orleans, La.App., 255 So.2d 506, maintains the trial court erred in failing to find connexity between the accident and plaintiff’s present disability. In so arguing, plaintiff points out that where an employee was apparently healthy before an accident, and became disabled thereafter, he has established causal connection.
It is elementary that in cases of this nature, each claim must be determined in the light of the facts and circumstances presented. In this instance, appellant seeks to prove disability allegedly resulting from aggravation of a pre-existing arthritis condition. It suffices to state that the medical testimony is clearly to the effect that such aggravation as resulted from the accident no longer exists.
We likewise find no error in appellant’s contention that the trial court erred in failing to consider the testimony of the lay witnesses. It is settled in our jurisprudence that where there is no serious dispute among the medical experts, the testimony of lay witnesses may not be considered to establish alleged disability in an action for workmen’s compensation benefits. See Hebert v. Your Food Processing & Warehouse Co., La.App., 170 So.2d 765, and cases therein cited. In this case, the medical experts unanimously agree that plaintiff is no longer disabled from the effects of the accident in question.
The judgment of the trial court is affirmed at appellant’s cost.
Affirmed.